IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CR-12-D

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| CHRISTOPHER DARNELL EVANS, ) | |
| Defendant. ) | |

On September 25, 2020, Christopher Darnell Evans ("Evans") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) and filed a memorandum and records in support [D.E. 934, 934-1, 944]. On January 13, 2021, Evans's counsel filed a supplement to Evans's pro se motion [D.E. 943]. On January 27, 2021, the government responded in opposition [D.E. 946]. As explained below, the court denies Evans's motion for compassionate release and dismisses Evans's request for home confinement.

I.

On September 11, 2017, pursuant to a written plea agreement, Evans pleaded guilty to conspiracy to participate in a pattern of racketeering (count one) and conspiracy to distribute and possess with the intent to distribute controlled substances (count seven). See [D.E. 358, 359]. On December 13, 2017, the court held Evans's sentencing hearing. See [D.E. 441]. At the hearing, the court adopted the facts set forth in the Presentence Investigation Report ("PSR"). See [D.E. 489] 4; Fed. R. Crim. P. 32(i)(3)(A)–(B). The court calculated Evans's total offense level to be 30, his criminal history category to be I, and his advisory guideline range to be 97 to 121 months'

imprisonment. See [D.E. 489] 5. After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Evans to 120 months' imprisonment on each count, to run concurrently. See id. at 28–33. Evans did not appeal.

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75%

2

of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—

   (I) suffering from a serious physical or medical condition,

   (II) suffering from a serious functional or cognitive impairment, or

   (III) experiencing deteriorating physical or mental health because of the aging process,

   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

   (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

   (C) Family Circumstances.—

   (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

3

Case 5:16-cr-00012-D   Document 953   Filed 03/25/21   Page 3 of 7

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See id. at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., id. at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d

---

      (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

  (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

4

Case 5:16-cr-00012-D   Document 953   Filed 03/25/21   Page 4 of 7

1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

Evans contends that he exhausted his administrative remedies. See [D.E. 943] 3–4; [D.E. 943-1]. The government has not invoked section 3582's exhaustion requirement. See United States v. Alam, 960 F.3d 831, 833–34 (6th Cir. 2020).[2] Accordingly, the court addresses Evans's claim on the merits.

Evans seeks compassionate release pursuant to section 3582(c)(1)(A). In support of his request, Evans cites the COVID-19 pandemic and his health conditions, including congestive heart failure, diabetes, hypertension, morbid obesity, and a history of a pulmonary embolism. See [D.E. 934] 3–4; [D.E. 943] 5–9. Evans also cites the conditions at FCI Hazelton, his employment history, his education, his conduct while incarcerated, and his release plan. See [D.E. 934] 4; [D.E. 943] 7–8.

As for the medical condition of the defendant policy statement, the policy statement requires that the defendant is "suffering from a serious physical or medical condition . . . from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Although Evans states that he suffers from congestive heart failure, diabetes, hypertension, morbid obesity, and has a history of pulmonary embolisms, he has not demonstrated that he is not going to recover from these conditions or that they cannot be treated while Evans serves his sentence. Accordingly, reducing Evans's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

---

[2] The Fourth Circuit has not addressed whether section 3582's exhaustion requirement is a jurisdictional or claims-processing requirement. The court assumes without deciding that the requirement is a claims-processing rule, and that the government must "properly invoke" the rule for this court to enforce it. See Alam, 960 F.3d at 833–34.

5

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, the conditions at FCI Hazelton, Evans's health conditions, and his release plan are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Even so, having reviewed the entire record, the section 3553(a) factors counsel against reducing Evans's sentence. See United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Evans is 31 years old and engaged in prolonged, serious criminal behavior between 2011 and 2017. See PSR [D.E. 438] ¶¶ 10–39. Evans conspired to participate in racketeering and drug trafficking activities as a member of the Black Mob Gangstas and Donald Gee Family sects of the United Bloods Nation, an extremely violent criminal organization that terrorized Raleigh for many years. See id. Evans was responsible for distributing 1,451.12 grams of cocaine and a quantity of marijuana. See id. ¶ 39. Evans also possessed a firearm and used violence in connection with his racketeering and drug trafficking activities. See id. ¶¶ 35, 37–39. Evans also had a leadership role in the gang and committed his crimes as part of a pattern of criminal conduct engaged in as a livelihood. See id. ¶¶ 74, 76. Evans also is a recidivist with convictions for possession of stolen goods and possession of drug paraphernalia, has performed poorly on supervision, and has a sporadic work history. See id. ¶¶ 47–48, 62–67. The court also has considered Evans's exposure to COVID-19, the conditions at FCI Hazelton, his health conditions, his employment history, his education, his conduct while incarcerated, and his release plan. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Having considered the entire

6

record, the steps that the BOP has taken to address COVID-19 and treat Evans, the section 3553(a) factors, Evans's arguments, the government's persuasive response, and the need to punish Evans for his serious criminal behavior, to incapacitate Evans, to promote respect for the law, to deter others, and to protect society, the court declines to grant Evans's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished).

As for Evans's request for home confinement, Evans seeks relief under the CARES Act. See [D.E. 943] 10–13. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). As such, the court dismisses Evans's request for home confinement.

II.

In sum, the court DENIES Evans's motion for compassionate release [D.E. 934] and DISMISSES Evans's request for home confinement.

SO ORDERED. This 25 day of March 2021.

JAMES C. DEVER III
United States District Judge

7

Case 5:16-cr-00012-D   Document 953   Filed 03/25/21   Page 7 of 7